IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT H.,[1] | ) |
| | ) |
|     Plaintiff, | ) |
| | ) No. 19 C 7282 |
| v. | ) |
| | ) Magistrate Judge |
| KILOLO KIJAKAZI, Acting | ) Maria Valdez |
| Commissioner of Social Security,[2] | ) |
| | ) |
|     Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Robert H.'s claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's request to reverse the Commissioner's decision is denied, and the Commissioner's motion for summary judgment [Doc. No. 22] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Andrew Saul has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

On March 5, 2015, Plaintiff filed claims for DIB and SSI, alleging disability since February 4, 2010. The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 13, 2018. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On August 29, 2018, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 4, 2010. At step two, the ALJ concluded that Plaintiff had the following severe impairments: lumbar degenerative disc disease and hip degenerative joint disease. The ALJ concluded at step three that his impairments, alone or in combination, do not meet or medically

equal a Listing. Before step four, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform sedentary work with the following additional limitations: no climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally stooping, kneeling, crouching, and crawling; and alternating with a standing position once per hour for five minutes without abandoning the workstation.

At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a construction worker. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former

3

occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'more than a mere scintilla.' . . . It means – and

4

means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately

5

articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III.   ANALYSIS

Plaintiff argues that the ALJ's decision was in error because (1) the Commissioner did not give proper weight to a medical report stating that he was disabled; (2) he is not educationally or physically qualified for one of the occupations listed by the vocational expert listed as work he could perform; and (3) the ALJ improperly analyzed his impairments under the relevant listings.

#### A.   <u>Report of Dr. Leon Huddleston</u>

Plaintiff's brief attaches what is styled an "Independent Medical Examination" performed by Leon M. Huddleston, M.D., J.D. and dated October 25, 2018, over eight months after the ALJ hearing and almost two months after the decision was rendered. Dr. Huddleston's report summarizes the ALJ's decision and some of the medical evidence listed in it. His physical examination of Plaintiff revealed full cervical range of motion, and about 70 degrees of flexion and 10 degrees of extension in the lumbar spine. Plaintiff reported to him that he

6

experienced moderate pain with bilateral lateral lean and rotation of the lumbar spine. Plaintiff also had a moderate degree of low back pain with palpation of the paraspinal muscles. He had full motor strength in both the upper and lower extremities and was able to climb on the exam table unaided, although he had some reflex issues and had a slight loss of balance while performing heel to toe walking. Plaintiff also told Dr. Huddleston that he experienced increased urination due to bladder spasms and said that he could sit or stand a maximum of ten minutes at a time and could not walk more than a block before resting.

Dr. Huddleston concluded, based on the nature of Plaintiff's complaints, his physical exam, and his review of the medical records, that Plaintiff suffers from chronic cauda equina syndrome, the indicators of which are severe low back pain, motor weakness, sensory loss or pain in one or both lower extremities. Symptoms can include bladder dysfunction or incontinence, erectile dysfunction, loss of lower extremity reflexes, and abnormal sensation in the bladder or rectum; and causes of the syndrome can include lumbar spinal stenosis and lumbar disc herniation. According to Dr. Huddleston, the syndrome can develop slowly, and Plaintiff's symptoms began in 2005 and have worsened over time.

In Dr. Huddleston's opinion, the ALJ's work restrictions are not consistent with Plaintiff's impairments. First, he is unable to stoop, kneel, crouch, or crawl, and second, he cannot work in a sedentary position due to his urinary incontinence. Dr. Huddleston asserted that Plaintiff would have to void approximately every

7

fifteen minutes, and he would experience bladder accidents if he could not leave the workstation that often.

Plaintiff's alleged disability onset date was February 4, 2010; his date last insured was December 31, 2017; the ALJ hearing took place on February 13, 2018; and the ALJ's decision was rendered on August 29, 2018. Dr. Huddleston's report was created based on an examination performed on October 25, 2018. Accordingly, Defendant argues that Dr. Huddleston never saw Plaintiff during the applicable time period, and therefore his opinion is not relevant. Plaintiff's reply maintains that he was entitled to obtain a report to present to the Appeals Council and incorrectly states that Defendant's claim that Dr. Huddleston "did not evaluate him during the relevant time period . . . is not an issue here." (Pl.'s Reply at 10.). To the contrary, the timing of the report is quite relevant. Dr. Huddleston did not even examine Plaintiff until after the ALJ rendered his decision, so the ALJ could not have erred by not considering his report. The question before the Court is thus whether the Appeals Council should have considered it.

The Appeals Council only receives evidence if the claimant shows good cause for not submitting the evidence previously, and it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); 20 C.F.R. § 404.970(b); *see also Getch v. Astrue*, 539 F. 3d 473, 483 (2008) (explaining that the Appeals Council will review a case if the new

8

and material evidence "makes the ALJ's decision 'contrary to the weight of the evidence' in the record") (citations omitted).

Evidence is "new" if it was unavailable to the Plaintiff at the time of the hearing and "material" if "there is a 'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." *Similia v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009) (citing *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005)). Medical evidence postdating an ALJ's decision is excluded unless it is "relevant to the claimant's condition during the relevant time period encompassed by the disability application under review." *Schmidt*, 395 F.3d at 742.

When the Appeals Council does not grant plenary review, its decision is "discretionary and unreviewable," and the ALJ's denial stands as the final and appealable order of the Commissioner. *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997). Only an Appeals Council denial based on a mistake of law, such as an erroneous determination that newly submitted evidence is not material, can be reversed by the Court. *Eads v. Secretary of the Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir.1993).

In its denial of Plaintiff's request for review of the ALJ decision, the Appeals Council acknowledged Plaintiff's effort to submit Dr. Huddleston's report as additional evidence but concluded: "The Administrative Law Judge decided your case through August 29, 2018. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 29, 2018." (R. 12.)

9

Plaintiff offers no contrary explanation as to why Dr. Huddleston's report relates back to the relevant time frame, nor does he provide any legal basis for finding that the Appeals Council should have considered it. Notably, when the Seventh Circuit has held that medical evidence post-dating the hearing dates back to the time before the hearing, the interval between the hearing and the new evidence is typically very short. *See e.g., Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012) (finding that a confirmed diagnosis of fibromyalgia one month from hearing date related back to the pre-decision period); *Bueno Dominguez v. Colvin*, No. 13 CV 1637, 2015 WL 1064844, at *5 (N.D. Ill. Mar. 19, 2015) (concluding that treatment notes dated twenty-two days after the hearing related back, but surgical notes dated five months after the ALJ decision did not). The eight-month lapse of time between the hearing and the medical report is clearly excessive. Furthermore, Dr. Huddleston concludes that the MRI findings "document the progression of his condition," (Pl.'s Br., Ex. A at 3), but he does not describe what specific MRI findings show that Plaintiff suffered from disabling Chronic Cauda Equina Syndrome during the relevant time frame.

Plaintiff has also not demonstrated good cause why he could not have obtained the report in time to include it in the record before the ALJ. There appears to be no dispute that Dr. Huddleston saw Plaintiff on only one occasion and for the sole purpose of rendering a disability opinion. As proof that Dr. Huddleston was his treating physician, Plaintiff argues that he was offered a treatment plan after that single visit, but there is no evidence that a treatment relationship actually existed.

10

Dr. Huddleston did not recommend that Plaintiff return for further visits despite his diagnosis of a very serious condition, stating only that "it is not clear if there is an opportunity to reverse his symptoms," and "[s]urgery may or may not be an option at this time." (Pl.'s Br., Ex. A at 4); *cf. Sears v. Bowen*, 840 F.2d 394, 399-400 (7th Cir. 1988) (finding good cause for not submitting records for psychiatric treatment commencing after the ALJ hearing, where the claimant was treated on a weekly basis, and "it is evident from the record that he was not an expert retained solely for the purpose of establishing a disability").

Finally, Dr. Huddleston's report is not new or material evidence. He primarily parrots the medical evidence in the ALJ's decision and its conclusions, adding only a handful of findings on physical examination but performing no new imaging or other tests. Plaintiff admits in his reply that Dr. Huddleston's report was only "used in furtherance of the Appellate stages of his claim, to counter [the ALJ's] flawed reasoning," (Pl.'s Reply at 11), which does not justify appellate review of the document.

> Although Dr. Hoerner arranges the factual particles contained in the record in a somewhat different pattern, his affidavit and report offers [sic] no new facts of any relevance. In short, the evidence is derivative rather than direct. It results from a retained physician's evaluation of the identical medical reports which composed the administrative docket. That Dr. Hoerner happened to view this collection of data differently, that he happened to disagree with the conclusion reached by the ALJ, does not render the evidence which forms the basis for his opinion any less cumulative of what already appears in—indeed, comprises the totality of—the record. If a losing party could vault the "newness" hurdle of § 405(g) merely by retaining an expert to reappraise the evidence and come up with a conclusion different from that reached by the hearing officer, then the criterion would be robbed of all meaning. A wide variety

11

> of evidence would be "new" in a sophisticated, enterprising world where there are often almost as many opinions as there are experts.

*Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 140 (1st Cir. 1987) (cited by *Sears v. Bowen*, 840 F.2d 394, 400 (7th Cir. 1988)).

Dr. Huddleston's report is not new or material, it does not relate back to the relevant time frame, and Plaintiff has not established good cause for failing to include it in the record before the ALJ. The Appeals Council did not err by refusing to consider it.

### B. Available Jobs in the Economy

The Vocational Expert ("VE") testified that for a hypothetical person with the same age, education, and work history as Plaintiff, limited to sedentary work with the additional limitations identified in the RFC, the following jobs exist in significant numbers in the national economy: inspector, surveillance system monitor, and bonder. Plaintiff argues that he is not qualified, by experience or education, for a construction supervisor or project manager job, and further contends that he cannot physically walk for extended periods of time, which he believes is a requirement of the position.

First, in response to counsel's questioning at the hearing, the VE expressly denied that the job of inspector "requires skill or higher training." (R. 90.) Second, there is no reason to conclude that the position has any walking requirements. The VE opined that it was consistent with the hypothetical sedentary RFC plus additional limitations, and his testimony also did not suggest that the job of inspector was related to construction at all. Third, assuming the VE did

miscategorize the exertional level of the inspector position, Plaintiff "forfeited the argument by failing to object to the testimony during the administrative hearing." *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016). Finally, even if the inspector jobs are eliminated, that alone would not establish that Plaintiff is disabled. The VE testified that Plaintiff could also perform two other jobs (surveillance system monitor and bonder), of which thousands of positions exist in the national economy. Plaintiff does not challenge his ability to perform those jobs, nor does he seriously question that they are sedentary positions that could be performed by a person with the RFC the ALJ assigned to him.

### C. Listings

Although the argument is wholly undeveloped, Plaintiff suggests that his impairments meet listings related to the musculoskeletal system, namely 1.02 (Major dysfunction of a joint); 1.04 (Disorders of the spine); and 1.08 (Soft tissue injury).[3] *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Defendant correctly responds that Plaintiff has failed to offer record evidence demonstrating he has met all necessary criteria of the cited listings. Moreover, the only medical evidence Plaintiff offers in support of this argument appears to be the belated medical opinion of Dr. Huddleston, which need not be considered for the reasons discussed above.

---

[3] Plaintiff's brief incorrectly described listing 1.08 as "Inability to ambulate effectively or sustain sufficient activities."

13

Plaintiff's submissions also generally discuss his various medical impairments and why he is incapable of working even a sedentary job.[4] He does not, however, point to specific evidence in the record that the ALJ disregarded or did not properly weigh in formulating the RFC, and therefore there is no basis for a finding that the ALJ's decision was not supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's request to reverse the Commissioner's decision is denied, and the Commissioner's motion for summary judgment [Doc. No. 22] is granted.

**SO ORDERED.**   **ENTERED:**

**DATE:   January 21, 2022**

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**

---

[4] Nearly all of Plaintiff's arguments that the ALJ did not adequately consider all his impairments were raised for the first time in his reply brief and are waived. *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021).